IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| FRANCE.COM, INC., a California corporation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil No. _____ |
| THE FRENCH REPUBLIC, ATOUT FRANCE, | ) |
| THE MINISTRY FOR EUROPE AND | ) |
| FOREIGN AFFAIRS, JEAN-YVES LE | ) JURY TRIAL DEMANDED |
| DRIAN, in his official capacity as the French | ) |
| Republic's Minister for Europe and Foreign | ) |
| Affairs, <france.com>, a domain name, and | ) |
| VERISIGN, INC., | ) |
| | |
| _____Defendants._____ | |

## **COMPLAINT**

### **Preliminary Statement**

1.        Plaintiff, who lawfully owned and used the domain <France.com> in commerce from 1994 until the expropriation complained of in this action, brings this lawsuit to recover ownership, possession, and control of its rightfully obtained online property. Defendants have unlawfully taken Plaintiff's property without compensation, causing irreparable harm to Plaintiff and unjust enrichment to Defendants. If left to stand, Defendants' actions threaten to rob Plaintiff of millions of dollars in branding, marketing, and business development efforts, and cause millions more in lost profits.

### **Jurisdiction and Venue**

2.        This Court has subject matter jurisdiction over this action because: (i) it involves federal questions that arise under the Anticybersquatting Consumer Protection Act and the Foreign Sovereign Immunities Act; (ii) it involves a federally registered trademark; and (iii) it requires a declaration of rights and other legal relations. *See Id.* § 1331 ("The district courts shall have original

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to... trademarks."); and 2201(a) ("In a case of actual controversy within its jurisdiction,... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.").

3.　　　　Venue is proper is this district because the property that is the subject of the underlying controversy between the parties, the domain name <France.com>, is located within this judicial district.

## Parties

4.　　　　Plaintiff France.com, Inc. is a corporation organized and in good standing under the laws of the State of California.

5.　　　　Defendant the French Republic ("France") is a foreign sovereign.

6.　　　　Defendant Atout France is the French Republic's Tourism Development Agency.

7.　　　　Defendant the Ministry for Europe and Foreign Affairs is a department of the French Republic.

8.　　　　Defendant Jean-Yves Le Drian ("Le Drian") is the French Republic's Minister for Europe and Foreign Affairs. As a result of Defendants' unlawful taking, Le Drian became, and currently remains, the registered owner of the disputed domain.

9.　　　　<france.com> is an internet domain name.

10.　　　Defendant VeriSign Inc. is a Delaware corporation with its principal place of business in Reston, Virginia. VeriSign, Inc. is the authoritative domain registry of all .com domain names.

## Factual Allegations

11.　　　In 1994, during the earliest years of the commercial Internet, Plaintiff's sole

owner, Jean-Noel Frydman ("Frydman"), lawfully purchased the domain name <France.com> from

Network Solutions, LLC.

12.    Frydman, a French-born individual living in America, was in the business of

facilitating American travel and tourism to France.

13.    Frydman subsequently incorporated his business as France.com, Inc., a California

corporation.

14.    Due to Plaintiff's effort and investment, the commercial website at <France.com>

became a highly successful venture, generating millions of dollars per year in sales.

15.    In recognition of Plaintiff's success in promoting and facilitating tourism to

France through <France.com>, Plaintiff earned numerous awards and accolades, including 2009

"Tour Operator of the Year" and the 2012 "French Affairs Award," both awarded by Defendant

Atout France. Exhibit A.

16.    Plaintiff is the owner of a valid and subsisting United States trademark registration

for FRANCE.COM in connection with the following goods and services:

> IC 035: Advertising services, namely, promoting and marketing the
> goods and services of others in the field of travel, shopping, business,
> entertainment, home decor, fashion, wines, food and education, all
> related to France.
>
> IC 039: Providing an on-line searchable computer database featuring
> information on travel; Provision of travel information; Travel and
> transport information service.
>
> IC 041: On-line journals, namely, blogs featuring articles in the field of
> travel, shopping, business, entertainment, home decor, food, wine
> education, cultural activities and news, all related to France.

Plaintiff's mark is published in the United States Patent and Trademark Office's Principal

Register as U.S. Trademark Registration No. 4514330, with a demonstrated date of first

use of June 18, 1995.  Exhibit B.

17.    Defendants have been aware of Plaintiff's ownership and conspicuous use of the

<France.com> domain name since at least 1995.

18.     Defendants have been aware of Plaintiff's ownership and conspicuous use of the FRANCE.COM registered trademark since at least 2014.

19.     Prior to the incidents complained of in this lawsuit, Defendants fruitfully collaborated with Plaintiff.

20.     Prior to the incidents complained of in this lawsuit, Defendants did not object to nor challenge Plaintiff's ownership or use of <France.com>. To the contrary, and as previously demonstrated in Exhibit A, Defendants publicly recognized Plaintiff as a leader in the tourism industry.

21.     In 2015, Defendants began expressing an interest in owning the <France.com> domain name and exploiting it for Defendants' own use.

22.     Defendants did not approach Plaintiff to purchase or license the domain, the trademark, or Plaintiff's underlying business and goodwill. Instead, in 2015, Defendants misused the French judicial system to seize the domain from Plaintiff without compensation, under the erroneous theory that Defendants were inherently entitled to take the domain because it included the word "France."

23.     Defendants knew that they did not, and do not, have a right to the word "France," as evidenced by Defendant Atout France's U.S. Trademark Registration No. 4027580, filed in 2009, in which Defendant expressly disclaimed the exclusive right to the word "France." Exhibit C.

24.     As part of the French lawsuit regarding this matter, the former Foreign Minister of France, Laurent Fabius, acknowledged that the French government could not have registered the <France.com> domain name in 1994, when Plaintiff acquired it, because the ".com" namespace was expressly reserved for private companies.

25.     On July 8, 2016, the Tribunal de Grand Instance de Paris ("High Court of Paris")

ordered the transfer of the <France.com> domain name to the French Republic, in contravention of both European and United States trademark law.

26.     Plaintiff appealed to the Cour d'Appel de Paris ("Paris Court of Appeals"), which affirmed the lower court judgment on September 22, 2017.

27.     Despite Defendants' lack of authority to seize property located within the United States, and notwithstanding the fact that Plaintiff had yet to be properly served with the Cour d'Appel's judgment, Defendants contacted Plaintiff's domain name registrar, Web.com, and demanded that <France.com> be transferred to Defendants.

28.     On March 12, 2018, without notice to Plaintiff, Web.com acquiesced to Defendants' improper demands and transferred <France.com> away from Plaintiff, to Defendants.

29.     When Web.com transferred ownership of <France.com> to Defendants, the domain was directed away from Plaintiff's business and towards a competing tourism website newly created by Defendants.

30.     The redirection of Plaintiff's domain name to Defendants' business immediately stopped all Internet traffic to Plaintiff's business, effectively shutting down Plaintiff's operations.

31.     As a result of Defendants' usurpation of Plaintiff's domain, Plaintiff was immediately blocked from receiving business emails and other electronic communications at addresses ending in "@france.com."

32.     The sudden disruption in Plaintiff's services, combined with Plaintiff's inability to receive or respond to customer communications, irreparably damaged Plaintiff's business.

33.     By improperly converting the <France.com> domain name and associated traffic and goodwill to their own use, Defendants have unjustly benefited from over two decades of advertising, promotion, and marketing undertaken by Plaintiff at Plaintiff's substantial expense.

34.     Plaintiff has lost, and continues to lose at an ever-increasing rate, significant

revenue due to the ongoing unavailability of Plaintiff's commercial website and email accounts.

35.     Plaintiff brings this action to recover Plaintiff's domain name and associated email accounts, to mitigate the continuing damage caused by Defendants' taking, and to seek fair compensation for the damages already incurred.

## Causes of Action

## COUNT I
## CYBERSQUATTING

36.     Congress passed the Anticybersquatting Consumer Protection Act (the "ACPA") in 1999 to address the problem of cybersquatting, which is defined as "purposely and maliciously registering as a domain name the trademark name of another company to divert and confuse customers." 106 Cong. Rec., S10517.

37.     Defendants have registered and are using the <France.com> domain name in bad faith in violation of the ACPA, 15 U.S.C. 1125(d).

38.     Plaintiff owns valid and subsisting U.S. trademark rights in FRANCE.COM.

39.     Plaintiff has made extensive prior use of the FRANCE.COM mark, both within the United States and internationally, in connection with the bona fide offering of goods or services.

40.     The hijacked domain name <France.com> is identical to Plaintiff's mark.

41.     Defendants intend to divert consumers to a site that was created for Defendants' commercial gain.

42.     Defendants' acts create a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site located at <France.com>.

43.     Defendants registered <France.com> knowing that the domain name is identical to Plaintiff's FRANCE.COM mark.

44.     Defendants are depriving Plaintiff of its rights to use the disputed domain name.

45.     As a direct and proximate result of the willful, deliberate, and unlawful conduct of

Defendants, Plaintiff has been damaged in its business in the amount to be proven at trial.

## COUNT II
## REVERSE DOMAIN NAME HIJACKING

46.        Plaintiff realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

47.        Defendants' seizure of the <France.com> domain name from Plaintiff and redirection of the domain to Defendants' own commercial website constitutes reverse domain name hijacking in violation of the ACPA.

48.        Since 1994, Plaintiff has been the original and rightful owner of the <France.com> domain name.

49.        Plaintiff was a bona fide purchaser for value of the <France.com> domain name, which Plaintiff registered and used in commerce continuously until it was wrongfully taken by Defendants, leading to this lawsuit.

50.        Plaintiff's name, email address, and contact information were duly listed in the WHOIS record for the domain name.

51.        Defendants knew that Plaintiff had rights and legitimate interests in the <France.com> domain name, and that Plaintiff had registered and was using the domain name in good faith. In fact, Defendants publicly recognized and honored Plaintiff's ownership and use of the domain prior to expropriating it for themselves.

52.        Defendants did not develop an interest in the <France.com> domain name until twenty-four years after the domain name was first acquired and registered by Plaintiff, allowing Plaintiff to develop the domain name into a multi-million-dollar commercial asset at Plaintiff's own effort and expense before taking it for themselves.

53.        In seizing the <France.com> domain name, Defendants improperly wrested the domain name from Plaintiff in spite of Defendants' knowledge that Defendants were not entitled to

the name.

54.     Defendants' seizure of the domain name through the French courts and with the complicity of Web.com, rather through a legitimate purchase from Plaintiff for compensation, was intended to enable Defendants to hijack a valuable asset without paying the cost.

55.     Defendants wrongfully seek to deprive Plaintiff of a legitimate domain name registration corresponding to a geographic term with no secondary meaning.

56.     Despite the fact that Defendants failed to show that Plaintiff had registered or used the <France.com> domain name in bad faith, the French courts wrongly ruled that the domain name should be transferred away from Plaintiff.

57.     Immediately following the French ruling, and before serving Plaintiff with the judgment, Defendants secretly contacted the domain name registrar, Web.com, and demanded that the <France.com> domain name be transferred to Defendants pursuant to the French ruling, despite the French court having no jurisdiction over property located within the United States.

58.     In response to Defendants' demands, Web.com transferred the domain name away from Plaintiff to Defendants, thereby preventing Plaintiff's lawful use of the domain name.

59.     Web.com's transfer of the <France.com> domain name in response to Defendants' demands prevented Plaintiff from using its account with Web.com to control the administrative and technical settings for the domain name, to host its business on the domain name, and to access its @france.com emails.

60.     The domain name was transferred from Plaintiff to Defendants suddenly and with no notice to Plaintiff or to Plaintiff's customers, thereby causing irreparable harm to Plaintiff's long-standing business.

61.     Neither Plaintiff's registration, nor its use of the <France.com> domain name was unlawful under the ACPA.

62.     Plaintiff has every right to possess and maintain <France.com>.

63.     Plaintiff has never used <France.com> in bad faith.

64.     Plaintiff has never trafficked in <France.com>, nor in any other domain name.

65.     The decision of the French court is due no deference in this Court.

66.     Defendants have overreached their rights to the geographic term "France" and wrongfully asserted a claim to the <France.com> domain name.

67.     As a direct and proximate result of the willful, deliberate, and unlawful conduct of Defendants, Plaintiff has been damaged in their business in the amount to be proven at trial.

## COUNT III
## EXPROPRIATION

68.     Plaintiff realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

69.     Defendants have taken the property of a United States citizen without compensation, in violation of international law.

70.     The property expropriated is located within the United States, in this judicial district.

71.     Defendants' acts constitute unlawful expropriation by a foreign state under the expropriation exception to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(3) (2012).

72.     As a direct and proximate result of the willful, deliberate, and unlawful conduct of Defendants, Plaintiff has been damaged in their business in the amount to be proven at trial.

## COUNT IV
## TRADEMARK INFRINGEMENT

73.     Plaintiff realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

74.     Defendants are engaged in committing acts of trademark /service mark

infringement under § 43(a) of the Federal Trademark Act, 15 U.S.C. § 1125(a), and at common law.

75.      Since at least 1995, Plaintiff has been continuously engaged in developing and maintaining a tourism website that offers its customers information and packages related to French travel. These services were offered under the mark FRANCE.COM.

76.      Plaintiff has continuously used this mark and the associated domain name <France.com> in connection with travel, tourism, and related services, and in the advertising and marketing of such services.

77.      As a result of Plaintiff's extensive and substantial advertising, search engine optimization ("SEO") efforts, and client satisfaction, the FRANCE.COM mark has become exceedingly well known to the public as a distinctive indication of the origin of Plaintiff's services, and accordingly is entitled to protection against infringing use.

78.      Defendants' seizure of the <France.com> domain name, operation of a travel and tourism website at the domain, and the marketing and promotion of Defendants' competing services infringe upon Plaintiff's rights to the mark FRANCE.COM.

79.      Defendants' use of the <France.com> domain name, which is identical to Plaintiff's FRANCE.COM mark, has caused and is causing a likelihood of confusion, mistake, or deception as to the source, origin, sponsorship or approval of the services of Defendants in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

80.      Defendants' takeover and use of <France.com> without notice, disclaimer, or clarification to the public falsely suggests an affiliation or connection with or sponsorship or approval of Defendants and its services by Plaintiff in violation of 15 U.S.C. § 1125(a).

81.      Defendants knew or should have known that they had no rights to the mark and the associated domain name and as such, acted maliciously in furtherance of their own commercial interests.

82.     As a direct and proximate result of the willful, deliberate, and unlawful conduct of Defendants, Plaintiff has been damaged in their business in the amount to be proven at trial.

## COUNT V
## FEDERAL UNFAIR COMPETITION

83.     Plaintiff realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

84.     Defendants have engaged in acts of unfair competition under 15 U.S.C. § 43(a) of the Federal Trademark Act, 15 U.S.C. § 1125(a), and at common law.

85.     The mark FRANCE.COM and the <France.com> domain name as used by Defendants constitute a false designation of origin that is likely to confuse or deceive the public as to the source, sponsorship and/or approval of the services offered by Defendants, thereby causing Plaintiff immediate, ongoing and irreparable damages.

86.     The intended nature and effect of Defendants' use of the FRANCE.COM mark and the <France.com> domain name is to redirect those consumers looking for Plaintiff's site, as well as those consumers attracted to <France.com> through Plaintiffs' quarter-century of investment and expenditures, to Defendants' nascent site.

87.     As a direct and proximate result of the willful, deliberate, and unlawful conduct of Defendants, Plaintiff has been damaged in their business in the amount to be proven at trial.

## Relief Requested

WHEREFORE, Plaintiff prays that the Court:

1.  Enter an order finding the Defendants engaged in cybersquatting in violation of the Anticybersquatting Consumer Protection Act.

2.  Enter an order finding that Defendants engaged in reverse domain name hijacking in violation of the Anticybersquatting Consumer Protection Act.

3.  Enter an order finding that Defendants engaged in unlawful expropriation of United States

property belonging to a United States citizen.

4. Enter an order finding that Defendants engaged in trademark infringement and unfair competition in violation of the Lanham Act.

5. Grant a preliminary injunction and a permanent injunction enjoining Defendants and their respective agents, employees, representatives, and all persons acting in concert or participation with each or any of them from using the mark FRANCE.COM or the domain name <France.com> in connection with their own commercial endeavors.

6. Grant a preliminary injunction and a permanent injunction requiring transfer of the domain name <France.com> back to Plaintiff.

7. Grant a preliminary injunction and a permanent injunction enjoining Defendants and their respective agents, employees, representatives, and all persons acting in concert or participation with each or any of them from directly or indirectly infringing in any manner on Plaintiff's registered trademark FRANCE.COM.

8. Award Plaintiff actual, statutory, punitive, and compensatory damages in an amount to be proven at trial, together with treble damages to the fullest extent permitted by law.

9. Award Plaintiff prejudgment and post judgment interest according to law.

10. Award Plaintiff its attorneys' fees, costs, and disbursements in this action.

11. Grant such other and further relief as this Court may deem just and proper.

Respectfully Submitted,

By _____/s/_____
David Ludwig (VSB No. 73157)
DUNLAP BENNETT & LUDWIG PLLC
211 Church Street SE
Leesburg, VA 20175
(703) 777-7319 (telephone)
(703) 777-3656 (facsimile)
dludwig@dbllawyers.com

Eve J. Brown
BRICOLAGE LAW, LLC
128 School Street
Walpole, Massachusetts 02081
(617) 671-5044 (telephone)
ejbrown@bricolagelaw.com

ATTORNEYS FOR FRANCE.COM