IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| FRANCE.COM, INC., | ) |
| Plaintiff, | ) Civil No. 1:18-cv-00460-LO-IDD |
| v. | ) |
| THE FRENCH REPUBLIC, ATOUT FRANCE, THE MINISTRY FOR EUROPE AND FOREIGN AFFAIRS, JEAN-YVES LE DRIAN, in his official capacity as the French Republic's Minister for Europe and Foreign Affairs, <france.com>, a domain name, and VERISIGN, INC., | ) |
| Defendants. | ) |

**SUGGESTION OF IMMUNITY
SUBMITTED BY THE UNITED STATES OF AMERICA**

The United States of America, pursuant to 28 U.S.C. § 517,[1] respectfully informs the Court of the Government's interest in this pending lawsuit against Foreign Minister Jean-Yves Le Drian, the sitting Minister of Foreign Affairs of the French Republic, among others, and hereby informs the Court that Foreign Minister Le Drian is immune from this suit.[2] In support of its interest and Suggestion of Immunity, the United States sets forth as follows:

---

[1] 28 U.S.C. § 517 provides that "any officer of the Department of Justice[] may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States."

[2] In this Suggestion of Immunity, the United States expresses no view on the merits of Plaintiff's claims against Foreign Minister Le Drian. The United States also expresses no view at this time on France's motion to dismiss for lack of jurisdiction on the basis of France's sovereign

1. The United States has an interest in this action because Foreign Minister Le Drian is the sitting Minister of Foreign Affairs of the French Republic, thus raising the question of his immunity from the Court's jurisdiction while in office. The Constitution assigns to the President of the United States alone the responsibility for representing the Nation in its foreign relations. *See, e.g.*, U.S. Const. Art. 2 § 3 cl. 4. As incident to that power, the Executive Branch has the authority to determine the immunity from suit of, *inter alia*, sitting heads of state, heads of government, and foreign ministers. After considering the relevant principles of customary international law, the implementation of the United States' foreign policy, and the potential implications for international relations, the Executive Branch has decided to recognize Foreign Minister Le Drian's immunity from this suit. As discussed below, this determination is controlling and is not subject to judicial review. Indeed, no court has ever subjected a sitting head of state, head of government, or foreign minister to suit after the Executive Branch has determined that he or she is immune.

---

immunity. The United States does note, however, that the Foreign Sovereign Immunities Act aims to protect foreign sovereigns not only from liability but also discovery and other burdens of litigation. *See, e.g.*, *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 210 (2d Cir. 2012) ("Because sovereign immunity protects a sovereign from the expense, intrusiveness, and hassle of litigation, a court must be 'circumspect' in allowing discovery before the plaintiff has established that the court has jurisdiction over a foreign sovereign defendant under the FSIA." (quoting *First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir. 1998))); *Hansen v. PT Bank Negara Indonesia (Persero), TBK*, 601 F.3d 1059, 1063–64 (10th Cir. 2010); *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 849 (5th Cir. 2000). In light of these considerations, "a court should decide the foreign sovereign immunity's defense '[a]t the threshhold' of the action" and, "if a decision about the matter requires resolution of factual disputes, the court . . . should do so as near to the outset of the case as is reasonably possible." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1324 (2017) (quoting *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 (1983)).

2. The Office of the Legal Adviser of the Department of State has informed the Department of Justice that the Embassy of France has formally requested the Government of the United States to inform the Court that Foreign Minister Le Drian is immune from this lawsuit. The Office of the Legal Adviser has further informed the Department of Justice that the "Department of State recognizes and allows the immunity of Foreign Minister Le Drian as a sitting foreign minister from the jurisdiction of the United States District Court in this suit." Letter from Marik String to Joseph H. Hunt (copy attached as Exhibit 1).

3. The immunity of foreign states and foreign officials from suit in our courts has different sources. For many years, such immunity was determined exclusively by the Executive Branch, and courts deferred completely to the Executive's foreign sovereign immunity determinations. *See, e.g.*, *Republic of Mexico v. Hoffmann*, 324 U.S. 30, 35 (1945) ("It is therefore not for the courts to deny an immunity which our government has seen fit to allow, or to allow an immunity on new grounds which the government has not seen fit to recognize."). In 1976, Congress codified the standards governing suit against foreign states in the Foreign Sovereign Immunities Act ("FSIA"), transferring to the courts the responsibility for determining whether a foreign state is subject to suit. 28 U.S.C. §§ 1602 *et seq.*; *see also id.* § 1602 ("Claims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the principles set forth in this chapter.").

4. As the Supreme Court has explained, however, Congress has not similarly codified standards governing the immunity of foreign officials from suit in our courts. *Samantar v. Yousuf*, 560 U.S. 305, 325 (2010) ("Although Congress clearly intended to supersede the common-law regime for claims against foreign states, we find nothing in the statute's origin or aims to indicate that Congress similarly wanted to codify the law of foreign official immunity.").

Instead, when it codified the principles governing the immunity of foreign states, Congress left in place the practice of judicial deference to Executive Branch immunity determinations with respect to foreign officials. *See id.* at 323 ("We have been given no reason to believe that Congress saw as a problem, or wanted to eliminate, the State Department's role in determinations regarding individual official immunity."). Thus, the Executive Branch retains its historic authority to determine a foreign official's immunity from suit, including the immunity of foreign heads of state, heads of government, and foreign ministers. *See id.* at 311 & n.6 (noting the Executive Branch's role in determining head of state immunity).

      5.      The doctrine of head of state immunity is well established in customary international law "pursuant to which an incumbent 'head of state is immune from the jurisdiction of a foreign state's courts.'" *Yousuf v. Samantar*, 699 F.3d 763, 769 (4th Cir. 2012) (quoting *In re Grand Jury Proceedings*, 817 F.2d 1108, 1110 (4th Cir. 1987)); *see also* SATOW'S DIPLOMATIC PRACTICE 9 (Lord Gore-Booth ed., 5th ed. 1979). Although the doctrine is referred to as "head of state immunity," it applies to heads of government and foreign ministers as well. *See Republic of Austria v. Altmann*, 541 U.S. 677, 688 (2004) (noting that *Schooner Exch. v. McFaddon*, 11 U.S. (7 Cranch) 116 (1812), "generally viewed as the source of our foreign sovereign immunity jurisprudence," found that "members of the international community had implicitly agreed to waive the exercise of jurisdiction over other sovereigns in certain classes of cases, such as those involving foreign ministers or the person of the sovereign"); *accord* Restatement (Second) of Foreign Relations Law §§ 65, 66 (1965) (noting that the immunity of a foreign state is enjoyed by heads of state, heads of government, and foreign ministers). Thus, U.S. courts, beginning with the Supreme Court in *Schooner Exchange*, have specifically recognized the immunity of sitting foreign ministers based on their status. *See*, *e.g.*, *Force v.*

4

*Sein*, No. 15-cv-7772-LGS, 2016 WL 1261139, *1 (S.D.N.Y. Mar. 20, 2016) (recognizing application of head of state immunity to Myanmar's foreign minister); *Tachiona v. Mugabe*, 169 F. Supp. 2d 259, 296–97 (S.D.N.Y. 2001) (recognizing application of head of state immunity to Zimbabwe's foreign minister), *rev'd in part on other grounds*, *Tachiona v. United States*, 386 F.3d 205 (2d Cir. 2004).

6. In the United States, head-of-state immunity determinations are made by the Department of State, exercising the President's authority in the field of foreign affairs. The Supreme Court has held that the courts of the United States are bound by Suggestions of Immunity submitted by the Executive Branch. *See Hoffman*, 324 U.S. at 35–36; *Ex parte Republic of Peru*, 318 U.S. 578, 588–89 (1943). In *Ex parte Republic of Peru*, the Supreme Court decided, in the context of pre-FSIA foreign state immunity, that "[u]pon recognition and allowance of the [immunity] claim by the State Department and certification of its action presented to the court by the Attorney General, it is the court's duty to surrender the [matter] and remit the libelant to the relief obtainable through diplomatic negotiations." 318 U.S. at 588; *see also id.* at 589 ("The certification and the request [of immunity] . . . must be accepted by the courts as a conclusive determination by the political arm of the Government."). Such deference to the Executive Branch's determinations of foreign state immunity is compelled by the separation of powers. *See, e.g.*, *Spacil v. Crowe*, 489 F.2d 614, 619 (5th Cir. 1974) ("Separation-of-powers principles impel a reluctance in the judiciary to interfere with or embarrass the executive in its constitutional role as the nation's primary organ of international policy." (citation omitted)).

7. For the same reason, courts have also routinely deferred to the Executive Branch's immunity determinations concerning sitting heads of state, heads of government, and foreign ministers. *See*, *e.g.*, *Samantar*, 699 F.3d at 772 ("[C]onsistent with the Executive's constitutionally delegated powers and the historical practice of the courts, we conclude that the State Department's pronouncement as to head-of-state immunity is entitled to absolute deference."); *Habyarimana v. Kagame*, 696 F.3d 1029, 1032 (10th Cir. 2012) ("We must accept the United States' suggestion that a foreign head of state is immune from suit—even for acts committed prior to assuming office—as a conclusive determination by the political arm of the Government that the continued [exercise of jurisdiction] interferes with the proper conduct of our foreign relations." (internal quotations marks omitted)); *Ye v. Jiang Zemin*, 383 F.3d 620, 626 (7th Cir. 2004) ("The obligation of the Judicial Branch is clear—a determination by the Executive Branch that a foreign head of state is immune from suit is conclusive and a court must accept such a determination without reference to the underlying claims of a plaintiff."); *Miango v. Democratic Republic of Congo*, No. 15-1265-ABJ, 2019 WL 2191806, *2 (D.D.C. Jan. 19, 2019) ("Courts are bound by Suggestions of Immunity submitted by the Executive Branch." (citations omitted)).

8. When the Executive Branch makes a determination that a sitting head of state, head of government, or foreign minister is immune from suit, judicial deference to that determination is predicated on compelling considerations arising out of the Executive Branch's authority to conduct foreign affairs under the Constitution. *See Ye*, 383 F.3d at 626. Judicial deference to the Executive Branch in these matters, the Seventh Circuit noted, is "motivated by the caution we believe appropriate of the Judicial Branch when the conduct of foreign affairs is

involved." *Id.*; *see also Ex parte Peru*, 318 U.S. at 588; *Spacil*, 489 F.2d at 619).[3] As noted above, in no case has a court subjected a sitting head of state, head of government, or foreign minister to suit after the Executive Branch has determined that the head of state, head of government, or foreign minister is immune.[4]

9. Under the customary international law principles accepted by the Executive Branch, head of state immunity attaches to a foreign minister's status as the current holder of that office. In this case, because the Executive Branch has determined that Foreign Minister Le Drian, as the sitting Minister of Foreign Affairs of the French Republic, enjoys head of state immunity from the jurisdiction of U.S. courts in light of his current status, Foreign Minister Le Drian is entitled to immunity from the jurisdiction of this Court over this suit.

---

[3] As other courts have explained, the Executive Branch possesses substantial institutional resources and extensive experience with which to conduct the country's foreign affairs, and the judiciary does not. *See, e.g., Spacil*, 489 F.2d at 619; *United States v. Truong Dinh Hung*, 629 F.2d 908, 913–14 (4th Cir. 1980). Furthermore, "in the chess game that is diplomacy[,] only the executive has a view of the entire board and an understanding of the relationship between isolated moves." *Spacil*, 489 F.2d at 619.

[4] To the contrary, courts have uniformly dismissed cases against heads of state, heads of government, and/or foreign ministers after the U.S. government filed a suggestion of immunity. *See, e.g.*, *Miango*, 2019 WL 2191806, at *2; *Tawfik v. al-Sabah*, No. 11 Civ. 6455, 2012 WL 3542209, at *3–*4 (S.D.N.Y. Aug. 16, 2012); *Manoharan v. Rajapaksa*, 845 F. Supp. 2d 260, 263–64 (D.D.C. 2012), *aff'd*, 711 F.3d 178 (D.C. Cir. 2013); *Habyarimana v. Kagame*, 821 F. Supp. 2d 1244, 1263–64 (W.D. Okla. 2011) ("Where the United States' Executive Branch has concluded that a foreign head of state is immune from suit, and where it has urged the Court to take recognition of that fact and to dismiss the suit pending against said head of state, the Court is bound to do so."), *aff'd*, 696 F.3d 1029 (10th Cir. 2012); *Leutwyler v. Queen Rania Al-Abdullah*, 184 F. Supp. 2d 277, 280 (S.D.N.Y. 2001) (holding that the Executive Branch's immunity determination on behalf of the Queen of Jordan "is entitled to conclusive deference from the courts"); *Tachiona*, 169 F. Supp. 2d at 297 (dismissing a suit against the President and Foreign Minister of Zimbabwe based upon a Suggestion of Immunity filed by the Executive Branch).

## CONCLUSION

For the foregoing reasons, the United States respectfully submits to the Court that Foreign Minister Le Drian is immune from this action.

Dated: December 4, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

G. ZACHARY TERWILLIGER
United States Attorney

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

GRACE X. ZHOU
Trial Attorney, Federal Programs Branch
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 616-8267
Email: grace.x.zhou@usdoj.gov

 /s/ *Lauren A. Wetzler*
LAUREN A. WETZLER
Chief, Civil Division
Assistant United States Attorney
2100 Jamieson Ave.,
Alexandria, VA 22314
Tel: (703) 299-3752
Fax: (703) 299-3983
Email: lauren.wetzler@usdoj.gov